JESSICA L. HAWTHORNE and FREDERICK R. CRANE, as Agents of the Court to Execute the Unexecuted Trust Created by Indenture Bearing Date December 22nd, 1921, between GRACE H. SMITH and ORMOND G. SMITH, Plaintiffs, *v.* GEORGE C. SMITH, JR., and Another, as Executors, etc., of ORMOND G. SMITH, Deceased, STREET & SMITH PUBLICATIONS, INC., and Others, Defendants.*

Supreme Court, Nassau County, October 8, 1935.

* Affd., 248 App. Div. 612.

*Karelsen & Karelsen* [*Eph A. Karelsen* and *Max J. Rubin* of counsel], for the plaintiffs.

*Lester S. Holmes* [*Lester S. Holmes* and *Stephen Callaghan* of counsel], for the defendants George C. Smith and another, as executors, etc., and others.

*Palmer & Serles* [*William Huck, Jr.,* of counsel], for the defendant Street & Smith Publications, Inc.

LEWIS (HARRY E.), J.   This is an action for an accounting.

In 1917 a corporation known as Street & Smith, Inc. was organized with an authorized capital of $4,000,000, consisting of 40,000 shares of the par value of $100 each.   This corporation took over the assets of a partnership consisting of Ormond G. Smith, his brother and sister.   The partnership had been engaged in an extensive publishing business, and its assets were transferred to the corporation in exchange for the latter's capital stock.   Ormond G. Smith and his brother, George C. Smith, each received 17,500 shares, and Cora A. Gould, the sister, received 5,000 shares.   The corporation prospered and during the years 1918 to 1921, following its organization, dividends were paid aggregating the sum of $1,630,000.   At the time of the creation of the trust here involved, Ormond G. Smith and his wife, Grace, had one child, Gerald, who was then nine years and five months of age.   On or about June 19, 1919, Ormond G. Smith transferred 7,496 shares of his stock in Street & Smith, Inc., to the joint ownership of himself and his wife, which continued until the creation of the trust hereinafter referred to.

On December 22, 1921, Grace H. Smith and her husband entered into a trust indenture which recites that the former is the owner and holder of 5,835 shares of stock of Street & Smith, Inc., and is desirous of making a provision and settlement for the benefit of

her son, Gerald, then a minor, by the conveyance in trust of the property above mentioned, subject, however, "to the trust and powers herein contained." After reciting the transfer of the said shares to the husband, the indenture specifies the duties of the trustee and the powers conferred upon him, as follows:

"In Trust, nevertheless, to hold, invest and reinvest the principal thereof; to collect the income and profits therefrom and to expend on behalf of the said Gerald Hewitt Smith, for his care, maintenance, travel, education and general benefit the whole or such portion of the net yearly income therefrom as in the judgment of the said trustee shall be wise and expedient, until he shall arrive at the age of twenty-one years.

"Upon the arrival of the said Gerald Hewitt Smith at the age of twenty-one years; or upon his death, if he should die before arriving at the age of twenty-one years, the said trust shall terminate, and the said trustee shall then convey, transfer, distribute and pay over, after deduction of commissions of the said trustee and all expenses incidental to such payment, the principal of said trust herein created, together with all accumulations and unexpended and undistributed income to the said Ormond G. Smith absolutely.

"If the said Ormond G. Smith should be dead when the said Gerald Hewitt Smith arrives at the age of twenty-one years, then, upon the termination of said trust, the principal together with all accumulations and unexpended and undistributed income shall revert to and be paid over to the said Grace H. Smith or to the Estate of the said Grace H. Smith, if she shall have died before the said Gerald Hewitt Smith. In the event of the death of said Gerald Hewitt Smith before arriving at the age of twenty-one years, and of the death of said Ormond G. Smith before that event, then, upon the termination of said trust, the said principal, together with all unexpended and undistributed income shall revert to and be paid over to the said Grace H. Smith or to the Estate of the said Grace H. Smith, if she should die before the said Gerald Hewitt Smith."

Ormond G. Smith qualified and continued to act as such trustee until his death.

Grace H. Smith died on January 13, 1923, leaving a last will and testament, dated December 22, 1921, which was duly admitted to probate, wherein she named her husband as sole executor and beneficiary.

Ormond G. Smith, the trustee, died on or about April 17, 1933, survived by a son Gerald, his only heir at law and next of kin, and his will, dated December 5, 1931, left to his son the entire estate which approximated $3,000,000, after deducting certain bequests totalling the sum of $450,000. The will was admitted to probate and letters testamentary were issued to the defendants George C.

Smith, Jr., and John S. Rogers, who qualified and are now acting as executors.

Gerald H. Smith, the beneficiary of the trust, became of age on September 28, 1933. There has been no accounting or settlement either by Ormond G. Smith or his executors. Plaintiffs have requested the latter to account and pay over the principal and all income derived, but defendants have declined so to do in the absence of a judicial determination as to the rights of all the parties.

Upon the petition of Gerald H. Smith, the beneficiary, an order was granted by a justice of this court and duly entered on June 7, 1934, appointing plaintiffs as agents of the court to execute the trust herein. Plaintiffs claim that the provisions of such order not only justify, but in fact direct, the bringing of this action.

Much of the evidence consists of stipulated facts, showing a recognition by the trustee of the existence of the trust and the performance of the duties imposed upon him.

It is conceded that the trust indenture impliedly authorizes an accumulation of income for the benefit of others than the beneficiary, and that this provision of the trust agreement is invalid as violative of section 16 of the Personal Property Law.

Therefore, the primary question for determination relates to the ownership of that portion of the income which accrued or should have accrued, and which was not expended in accordance with the provisions of the trust for the welfare of the beneficiary during his minority.

Plaintiffs mainly contend: *First*, that under the provisions of the trust, the rents and profits are validly disposed of, and, therefore, the void provision for accumulation should be eliminated and the valid disposition of income enforced, with the result that the entire income will be vested in the beneficiary; and *second*, that in decisions which have sustained substantially identical trusts, it has been held that the beneficiary named was entitled to all the income upon the termination of the trust.

Defendants, however, urge that the implied direction is to accumulate so much of the income as the trustee does not deem it " wise and expedient " to expend for the infant; that so much of the income as in the trustee's judgment could not be wisely and properly expended for the infant was surplus income, of which no valid direction for accumulation had been made, and hence such income, under section 11 of the Personal Property Law, belongs to the person presumptively entitled to the next eventual estate, namely, Ormond G. Smith.

In order to ascertain the intent of the settlor, it is necessary to consider the facts and circumstances surrounding the creation of the

trust. (*Matter of James*, 146 N. Y. 78; *Rezzemini* v. *Brooks*, 204 App. Div. 157; *First Nat. Bank & T. Co.* v. *Palmer*, 261 N. Y. 13; *Chemical Bank & T. Co.* v. *Streat*, 263 id. 159.) A void provision may be as relevant and potent as a valid one in determining such intent. (*Van Nostrand* v. *Moore*, 52 N. Y. 12, at p. 21; *Tilden* v. *Green*, 130 id. 29, at p. 55; *Matter of Hoyt*, 27 App. Div. 285, at p. 289.)

The indenture recites the desire of the mother to make a " provision and settlement " for her minor son. But that is immediately qualified by the words, " subject, however, to the trust and powers herein contained." Thus, at the very outset there is a limitation upon the extent of the proposed settlement, unambiguously expressed in the direction to the trustee to expend on behalf of the beneficiary the whole or such portion of the net yearly income as in the trustee's judgment shall be deemed " wise and expedient." The amount of the authorized expenditure, therefore, is dependent on the trustee's discretion. If the indenture in this respect be deemed to effect a gift, the extent thereof is controlled by the trustee's judgment. Nothing further is given. The subsequent provision whereby in three specified contingencies the principal, " together with all accumulations and unexpended and undistributed income," in one contingency is to be paid over to Ormond G. Smith, absolutely; in another, to revert to the mother, Grace H. Smith, and in the third, to the latter's estate, clearly indicates an intent that such income was in no event to become the property of the infant beneficiary.

The mother's intent in this respect is further borne out by the conditions and circumstances surrounding the life of the beneficiary at the time the trust was created. He was then about nine years of age. His father and mother, as stated, were large stockholders in a corporation which was engaged in a very lucrative enterprise and which, for several years prior to the creation of the trust, was yielding an annual profit of about $200,000. During that period the yearly income from the 5,835 shares of stock, which constituted the corpus of the trust, was approximately $60,000. At and prior to this time the husband was maintaining the family in luxury. They occupied a palatial residence in Manhattan, and an extensive summer estate on Long Island. The boy had a governess and a tutor, and from time to time attended exclusive private schools, and enjoyed a mode of living which was in keeping with the wealth of his parents. Presumably, the mother desired to safeguard her son against adverse possibilities in the future; but existing conditions and circumstances forbid the inference that she contemplated that the whole, or the greater portion of the very large income would or could be prudently spent for the welfare of her boy who already was surrounded by every comfort and luxury that great wealth

could afford. In an even lesser degree do these existing circumstances warrant the inference that the mother of this boy, at a time when his moral standards and traits of character were as yet undeveloped, intended to vest in him a present right to the surplus or unexpended income which she must have contemplated would of itself amount to an independent fortune. This conclusion is transformed into a certainty by the trust provisions whereby the accumulated and unexpended income is directed to be paid not to the beneficiary, but to others. The extent to which extraneous circumstances of a somewhat similar character may be considered in ascertaining intent, is illustrated in *Chemical Bank & T. Co. v. Streat* (263 N. Y. 159) and much of the reasoning in that case is applicable here.

Plaintiffs largely rely on *Matter of Hoyt* (116 App. Div. 217) in support of their contention that where a trust contains an invalid provision for accumulation and distribution of income, the latter immediately becomes the property of the beneficiary, though the testator or settlor of the trust has expressed a clearly contrary intent. Prior to that decision, the case had been before the Court of Appeals upon another phase of the litigation. (160 N. Y. 607.) That case is clearly distinguishable from the one at bar. The provision there involved directed the trustee to apply the income to the use of the beneficiary, who was the testator's daughter and a mature woman, " in the most bounteous and liberal manner as to expenditure and so as to promote her convenience and comfort and gratify her reasonable desires." Thus the only practical restriction upon the beneficiary's demands, and upon the trustee's right to apply the income, is found in the words " reasonable desires." As stated, the daughter was of mature years and presumably her traits, character and general mode of living were known to her father. These circumstances permitted the inference that the settlor, in formulating the trust provision, contemplated that the promotion of his daughter's utmost convenience and comfort and the gratification of her reasonable desires might require expenditure of the entire income. This is demonstrated by the provision relating to the disposition of the surplus income, " if any." Therefore, the opinion states: " The testator evidently regarded a surplus of income as a mere possibility, and as a matter of precaution provided for the disposition of the same." But in the instant case the existence of a surplus of income must be deemed to have been a certainty rather than a " mere possibility " or probability in the mind of the settlor. Moreover, the decision in the *Hoyt* case is expressly limited to " the special facts " there presented. (See *Chemical Bank & T. Co. v. Streat, supra.*) *Matter of Hoyt (supra)*

is authority only for the proposition that an illegal provision may be eliminated and effect be given to some " other and legal distribution," which accords with the testator's intent; and the basis for that decision, as indicated in *Chemical Bank & T. Co.* v. *Streat* (*supra*), was that " the entire income was intended absolutely to be devoted to the use of the beneficiary." Such intent could be effectuated by eliminating the illegal provision. In the instant case, as previously stated, the expressed intent of the mother was that the contemplated surplus of income should not go to the boy, but to others, and that intention must prevail.

*Matter of Keogh* (112 App. Div. 414) and *Pray* v. *Hegeman* (92 N. Y. 508), cited as controlling authorities in the *Hoyt Case* (*supra*), support defendants' contention rather than plaintiffs', to the effect that where there is surplus income with no valid provision for accumulation, it belongs to the person presumptively entitled to the next eventual estate.

The holding in *Crawford* v. *Dexter* (178 App. Div. 764; affd., 224 N. Y. 586) is not adverse to the conclusions reached herein. The provisions there involved were entirely different, so that the finding of intent in that case furnishes no basis upon which to predicate a similar finding here. There it was emphasized that the " clear intention " of the testator was disclosed by the provisions of his will and was not substituted in place of a clearly manifested contrary intent.

It, therefore, follows that plaintiffs have no legal or equitable interest in the unexpended accumulated income. In view of this conclusion, it is unnecessary to consider the transactions of the trustee in connection with the organization of the Overland Service Company and the Delaware Service Company.

Judgment is directed in favor of the defendants, dismissing the complaint.